# Case No. 8,534.

## The LOUIS DOLE.

### [5 Biss. 172.] [1]

District Court, N. D. Illinois. July Term, 1870.

COLLISION—DUTY OF APPROACHING TUGS—WHERE RIVER BEGINS—RULE OF THE RIVER.

1. Where tugs are approaching on converging lines, and one gives the signal to pass a-larboard, to which the other answers that she means to pass a-port, and the first repeats her signal, the first has not the right to presume from a failure to answer her second signal that the other has yielded her course, but should proceed cautiously, and not run across the lines of the other. She must take notice of the fact that there is danger of a collision, even though the other tug may be in the wrong place and on the wrong course.

2. The rules of river navigation apply with full force on the Chicago river to the extremity of the pier.

3. Outgoing tugs should keep south of the center of the channel, and incoming tugs to the north of it. A tug going out along the North pier is in the wrong place, and chargeable with the consequences.

Libel for damages caused by collision.

BLODGETT, District Judge. I have very carefully considered the testimony in this

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

case. The libel in this case alleges that the tug Evans, on the night of the 7th of July, 1869, was coming into the Chicago harbor, having been out on the lake with a tow, and when about midway of the North pier, east from the slip or outer harbor on the north side, she came in collision with the tug Louis Dole; that the Evans was guilty of no negligence on her part; that the collision was caused solely through mismanagement on the part of the officers and crew of the Dole, whereby a large amount of damage was sustained by the Evans, for which the libel is brought.

The evidence in the case is substantially this: On the evening in question, the Evans had been out into the lake with a tow, had rounded to and was coming up the harbor. The tug Louis Dole passed through the draw of Rush street bridge and went down the harbor, keeping close along the North pier, and when near the west end of the extension she heard a signal from the Evans, one blast of the whistle, indicating the fact that the Evans had discovered the Dole and wished to pass on the starboard side of the Dole coming up. The Dole responded to this signal from the Evans by a signal indicating that she did not or could not give way and allow the Evans to pass to the starboard. The Evans responded to that signal by a further signal that she could not go to the port of the Dole, and put her own helm hard a-port, and went toward the North pier. The result was that the two tugs came in collision.

There is a mass of testimony, very much of it contradictory in its character, as to the relation which these vessels bore to each other when they mutually discovered each other, and also the distance they were from each other. The weight of the testimony, taking into consideration its credibility and probable truth from all the surrounding circumstances, satisfies my mind that the Evans was within about sixty feet of the North pier at the time she discovered the Dole, and from three to four hundred feet to the eastward of her, and that the Dole was from six to twenty feet from the North pier; that the relation of the two vessels was such as to bring them within the rules and regulations prescribed by the law in regard to vessels approaching each other upon converging or intersecting lines, and that the Evans not only had the right of way, but it was her duty to go to the starboard of the Dole. They were both so close to the pier that I think it was clearly manifest that they were approaching each other on converging or intersecting lines. The question is, what was their respective duty under the circumstances?

The law fixes that they are each to give way. Where they are both steam vessels the rule of the road to be observed is, that each is to go to the right. The Evans indicated, on the first discovery of the Dole, her intention to obey this rule, and gave the signal which is required for that purpose, which was understood by those on board the Dole. The Dole, for some reason not very satisfactorily explained, refused to yield the way to the Evans, and indicated by a signal well understood on board the Evans its desire to keep on its course and pass, of course, on the port side of the Evans. The Evans at once responded to this signal by a signal indicating that she would not give way or yield the right which the rules and sailing regulations gave her to go to the starboard. No further response was heard on board the Evans as to whether they would yield or not.

The question then is, had the Evans a right to suppose that, having insisted on its right to go to the starboard, the Dole had yielded, although they had first indicated their wish or desire to pass upon the other side; and had those in the management of the Evans the right to assume that the Dole had abandoned its intention to pass upon the port side by not responding to their second signal?

I do not think that the mere failure to respond to the second signal of the Evans was enough to justify the Evans in running recklessly and without due care across the bows of the Dole under the circumstances; there might have been some supervening and controlling cause which prevented absolutely the Dole from going to the starboard, and therefore it should have been and was the duty of those in charge of the Evans, on being apprised of the location of the Dole and their disinclination to go to the right, to proceed with caution. But the evidence shows that the Evans did proceed with caution; that putting their helm a-port so as to go to the starboard, the Evans shut off and proceeded slowly, and finally reversed its wheel as they saw the Dole was not changing its position. The two vessels came together in such a manner as to indicate that neither of them were moving very rapidly at the time the collision actually occurred, and the fault in the whole matter—the proximate cause—seems to me to lie in the fact that the Dole was upon the wrong side of the stream.

It is contended on the part of the respondents that this was the open lake, and that the rules of the river do not apply there; but I apprehend that the moment the channel is obstructed by the North pier, you are within the harbor of the city, and the rules of river navigation apply with their full force. The evidence in this case, even if evidence were wanted on the subject, goes to show that the true course for tugs descending the harbor, going into the lake, is along the middle of the stream, or south of the thread of the stream, while the course for tugs ascending is along the North pier. This is only the usage, but it would seem to be the law of the case, as applying the law of the road, the laws of river navigation and harbor navigation, to the conduct of vessels operating

within the waters of Chicago harbor. It is true there was open water to the south of this pier and that vessels could go to a wide range to the south, limited only by their draft of water; but the range to the north was limited by the North pier. and it was in the route where returning tugs, or tugs with tows, or vessels coming into the harbor, would naturally be. A tug going down,—going out of the harbor,—with the entire range to the south of them unobstructed, should certainly—whether it is a matter settled by usage or not (and if not settled now, it should be hereafter)—understand they are not in the right place when they are hugging the pier. The ordinary rules of the way apply to the river and harbor as far as the harbor is controlled by the artificial structure for the purpose of making the harbor, and vessels navigating the waters there are governed by the ordinary rules of river and harbor navigation.

When the tug Dole started down the harbor and held her course in close proximity to the North pier, they must have known that they were within the route usually occupied by vessels and by tugs coming up the harbor. They were, therefore, in the wrong, —they were in the wrong place,—and bound, of course, for the consequences of that wrong.

I cannot say that the Evans is entirely blameless in the matter, because I think that when she discovered that the Dole was there, no matter from what cause, whether by her own disregard of the rules of navigation or from any other reason, the fact that she was there became a patent fact to those in control of the Evans. and they were bound to take notice of it and to manage their craft accordingly, and to approach the place where the Dole was with due caution. The Evans was running at a pretty rapid rate of speed at the time she signaled the Dole, and seems to have kept up that speed for some time at least.

I have come to the conclusion that it is a proper case for the division of the damages which were received by the two vessels. I think that the Dole was guilty of negligence in being alongside the North pier in the route usually traversed by vessels coming into the harbor, and that her negligence consisted in being out of place; that the Evans was guilty of negligence in running at too rapid a rate of speed and of going to the starboard after receiving the Dole's signal that she, the Dole, wished to pass on the port side. There may have been a reason, I do not say that it existed in this case, but I say that it might exist, why a tug cannot obey the sailing regulations; but it is enough for the purpose of this case that the Evans notably disregarded all the circumstances.

It is to be borne in mind that this was in the night-time, that the parties could not see each other, and I think it was reckless on the part of the officers of the Evans to rush her into collision with the Dole, notwithstanding the fact that the Dole was out of place. I shall therefore decree that a reference be made to the master to ascertain the amount of damages sustained by the two boats, and that those damages be borne equally by them.